UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBORAH L. ADAMS,

        Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

        Defendant.

CASE NO.    C07-5437RBL-KLS

REPORT AND RECOMMENDATION

Noted for June 6, 2008

      Plaintiff, Deborah L. Adams, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

      Plaintiff currently is 46 years old.[1] Tr. 33.  She has a high school education and past work experience as a certified nursing assistant, assistant manager of a cafeteria, cashier, cook, video store clerk, and lottery counter clerk. Tr. 15, 28, 60, 65, 73.

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

Plaintiff filed applications for SSI and disability insurance benefits on November 21, 2003, and December 18, 2003, respectively, alleging disability as of June 1, 2003, due to lower back pain, esophagitis and gastritis, arthritis, high cholesterol, and depression. Tr. 14-15, 34, 53-55, 550-55. Her applications were denied initially and on reconsideration. Tr. 14, 34-35, 37, 555-57. A hearing was held before an administrative law judge ("ALJ") on August 3, 2006, at which plaintiff, represented by counsel, appeared and testified. Tr. 562-75.

On November 22, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)     at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)     at step two, plaintiff had "severe" impairments consisting of degenerative and discogenic disorder of the lumbar spine, degenerative changes in the ankles, knees and shoulders, carpal tunnel syndrome, asthma, affective disorders, and a history of substance abuse;

(3)     at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     at step four, plaintiff had the residual functional capacity to perform light work, with certain other non-exertional limitations which did not significantly erode the range of light work she could perform, but which precluded her from performing her past relevant work; and

(5)     at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 14-29. Plaintiff's request for review was denied by the Appeals Council on June 22, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.

On August 21, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on October 29, 2007. (Dkt. #7). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits for the following reasons:

(a)     the ALJ erred in rejecting the opinion of Joseph Clem, M.D., an examining psychiatrist;

(b)     the ALJ erred in assessing plaintiff's residual functional capacity; and

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

1

2
    (g)      the ALJ erred in relying on the Commissioner's Medical-Vocational Guidelines (the "Grids") at step five of the sequential disability evaluation process.

3 The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set

4 forth below, recommends that while the ALJ's decision should be reversed, this matter should be

5 remanded to the Commissioner for further administrative proceedings.

6 DISCUSSION

7        This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

8 Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole

9 to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

10 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson

11 v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

12 a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

13 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

14 one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749

15 F.2d 577, 579 (9th Cir. 1984).

16 I.      The ALJ Erred in Rejecting the Opinion of Dr. Clem

17        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

18 medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in

19 the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions

20 of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion

21 must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th

22 Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact

23 inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

24 "falls within this responsibility." Id. at 603.

25        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

26 supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a

27 detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

28 thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the

REPORT AND RECOMMENDATION
Page - 3

1   evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences

2   from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

3          The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

4   either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

5   treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific

6   and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However,

7   the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>,

8   739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only

9   explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d

10  700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

11         In general, more weight is given to a treating physician's opinion than to the opinions of those who

12  do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

13  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings"

14  or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190,

15  1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242

16  F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

17  opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion

18  may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u>

19  at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

20         Plaintiff was evaluated by Joseph Clem, M.D., in early May 2004.  Dr. Clem performed a mental

21  status examination, during which plaintiff "maintained good eye contact" and exhibited "no malingering or

22  factitious behaviors." Tr. 429.  However, her speech was "pressured" and "notable for being tangential and

23  circumstantial at times." <u>Id.</u>  While plaintiff had "cohesive thought processes" with no delusions or

24  suicidal or homicidal ideation, she "evidenced capriciously changing affect." Tr. 430.  Plaintiff was

25  oriented and showed intact memory, but her intelligence was estimated to be "below average." <u>Id.</u>  In

26  addition, although plaintiff was able to follow a three-step command "without problems," she had "some

27  difficulty following conversation being pressured and distractible." <u>Id.</u>

28         Dr. Clem diagnosed plaintiff with a severe, mixed bipolar disorder, without psychotic features, a

panic disorder without agoraphobia, amphetamine dependence in early remission, and a global assessment

of functioning ("GAF") score of 51. Tr. 431.  In terms of prognosis, Dr. Clem opined as follows:

> Based on today's examination findings and current situation, this claimant's problems are potentially treatable.  However, her likelihood of recovery over the next 12 months is very limited.  This opinion is based upon her having a very complicated array of medications without appreciable benefit.
>
> Further, she is not currently on any mood stabilizing agents and bipolar disorder by its nature is very difficult to treat successfully.
>
> Further, she has had these symptoms for a decade and this has been complicated by her substance use, which is often the case for many people with bipolar disorder.
>
> It does appear that she is invested in the current rehabilitation program.
>
> She will likely still need to have intensive psychopharmacological management, as well as psychotherapeutic intervention to help further stabilize her.

Id.  Dr. Clem also gave the following assessment of plaintiff's ability to function:

> This claimant does appear to be capable of managing her own financial affairs in the future.  However, at the present time given that she is early in her recovery, it does appear prudent to remain with a designated payee through her rehabilitation program.  She does have the ability, however, to perform basic mathematical calculations.
>
> The claimant does have the ability to perform some basic simple and repetitive tasks, but detailed and complex tasks would likely prove difficult for her.
>
> She may have difficulties in processing information in instructions from supervisors, as well as manifesting some difficulty in interacting appropriately with coworkers and the public due to her erratic mood symptoms.
>
> She would likely not perform her work activities on a consistent basis even with special or additional supervision due to her recurrent mood cycling.
>
> She would likely not maintain regular attendance in the workplace or complete a normal workday or workweek without significant interruptions from her bipolar illness, as well as anxiety symptoms.
>
> She would not likely deal well with the usual stressors encountered in a competitive workplace environment.

Tr. 431-32.

The ALJ addressed Dr. Clem's opinion as follows:

> . . . I have considered the opinion of Dr. Clem, but give it minimal weight in this evaluation.  Dr. Clem only evaluated the claimant on one occasion and was not privy to the entirety of the claimant's medical records and treatment notes.  Further, his conclusions are contradicted by other evidence in the record which shows that the claimant's mental impairments have responded well to medication management.  I note, moreover, that bipolar symptoms are similar to manifestations of meth[amphetamine] abuse.

1   Tr. 19.  Plaintiff argues these are not legitimate reasons for rejecting Dr. Clem's opinion.  The undersigned

2   agrees.

3       As noted above, the ALJ first discounts the opinion of Dr. Clem because he evaluated plaintiff on

4   only one occasion.  But it is hardly atypical for an examining medical source to have performed only one

5   evaluation or examination.  Indeed, this Court has upheld ALJ determinations of non-disability in the past

6   on the basis of such examining medical source opinion evidence.  While it certainly may be valid for an

7   ALJ to discount the opinion of an examining medical source in light of other medical opinion evidence in

8   the record from a source who has seen or treated the claimant over a longer period or on a more frequent

9   basis or which is more reliable for other reasons, the ALJ in this case did not do so.  Indeed, as pointed out

10  by plaintiff, and as explained in further detail below, there is no other such evidence in the record to form a

11  sufficient basis upon which the ALJ could reject Dr. Clem's opinion.

12      The second reason put forth by the ALJ – that Dr. Clem was not privy to the entirety of plaintiff's

13  medical records and treatment notes – is equally invalid.  The mere fact that an examining medical source

14  does not review all, or even any, of the other medical evidence in a claimant's record does not in itself

15  cause an examining source's opinion to be suspect.  That is, it is perfectly acceptable for that examining

16  source to base his or her opinion of the claimant's medical condition and ability to function solely on the

17  medical evaluation or examination performed at the time.  That is essentially what an examining medical

18  source does, and in fact what Dr. Clem expressly stated that he did here.  See Tr. 431.

19      In addition, again while it may be valid to discount the opinion of an examining psychiatrist, such

20  as Dr. Clem, based on other more reliable evidence in the record that contradicts it, the ALJ pointed to

21  none here.  The ALJ did state that Dr. Clem's conclusions were contradicted by "other evidence" in the

22  record which showed plaintiff's mental impairments had responded well to medication.  However, again

23  the ALJ did not point to any specific evidence showing this to be the case.  See Embrey v. Bowen, 849 F.2d

24  418, 421 (9th Cir. 1988) (ALJ may not reject opinion of treating or examining physician by merely stating,

25  without more, that there is lack of objective medical findings in record to support that opinion).  The ALJ

26  did go on to discuss other medical evidence in the record regarding plaintiff's mental condition, but none

27  of that evidence was sufficient to call into question Dr. Clem's conclusions.  `

28      The record does contain a psychiatric review technique form completed by Richard Winslow,

1    M.D., in early August 2004, and affirmed by Thomas Clifford, Ph.D., in early December 2004, in which

2    plaintiff was found to have at most only mild mental functional limitations as a result of her diagnosed

3    impairments. Tr. 250.  Dr. Winslow and Dr. Clifford also made similar findings in a mental residual

4    functional capacity assessment form at the same time, and concluded that plaintiff: could understand,

5    remember and carry out simple instructions; could maintain focus and attention on simple tasks; had no

6    social limitations from her mental impairments, although she might occasionally be distracting to co-

7    workers when exhibiting pain behavior; and could respond to simple changes. Tr. 255-57.

8            Drs. Winslow and Clifford are non-examining medical sources, however, and thus their opinions,

9    as pointed out by plaintiff, alone may not constitute substantial evidence. See Lester, 81 F.3d at 830-31;

10   Tonapetyan, 242 F.3d at 1149.  In addition, other medical opinion source evidence in the record supports

11   Dr. Clem's findings.  For example, another non-examining medical source, Matthew Comrie, Psy.D., also

12   completed psychiatric review technique and mental residual functional capacity assessment forms in late

13   May 2004, in which he found plaintiff to be at least moderately impaired in her ability to function socially

14   and maintain concentration, persistence or pace. Tr. 232, 236-37.  In addition, similar to the findings of Dr.

15   Clem, Dr. Comrie found plaintiff to be markedly limited in her ability to complete a normal workday and

16   workweek, perform at a consistent pace without an unreasonable number and length of rest periods, and

17   interact appropriately with the general public. Tr. 237.

18           Defendant argues the ALJ noted that from May 2004, to October 2005, plaintiff did not seek any

19   psychiatric or psychological treatment. See Tr. 19.  A lack of evidence in the record showing plaintiff

20   sought such treatment, however, does not necessarily indicate any improvement in her condition occurred.

21   Indeed, there may have been a number of valid reasons plaintiff did not pursue treatment.  For example,

22   many people who suffer from depression often do not recognize their condition reflects a serious mental

23   illness. See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996); see also Blankenship v. Bowen, 874

24   F.2d 1116, 1124 (6th Cir.1989) (finding questionable practice of chastising one with mental impairment

25   for exercise of poor judgment in seeking rehabilitation).  Plaintiff also may have lacked adequate resources

26   to seek additional needed mental health treatment, though it is not clear the record supports this.

27           Lastly, the ALJ notes that bipolar symptoms are similar to manifestations of methamphetamine

28   abuse.  The ALJ, however, points to no medical evidence in the record that supports this statement.  As

     such, the ALJ appears to have substituted his lay opinion for that of a medical expert, which is improper.

See <u>Gonzalez Perez v. Secretary of Health and Human Services</u>, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); <u>McBrayer v. Secretary of Health and Human Services</u>, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); <u>Gober v. Mathews</u>, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).

II.    <u>The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. <u>Id.</u>  It thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. <u>Id.</u>  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." <u>Id.</u>  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u>  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." <u>Id.</u> at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> The claimant has the residual functional capacity to perform a not significantly eroded range of light work.  She can lift and carry up to 10 pounds frequently and up to 20 pounds occasionally.  She is able to sit, stand, and walk for about 6 hours in an 8 hour work day.  The claimant can perform occasional stooping and crouching, but needs to avoid concentrate [sic] exposure to vibrations.  The claimant's affective disorder and substance abuse disorder impose some moderate limitations on her ability to understand, remember and carry out detailed tasks.  However, the claimant retains the ability to perform the mental demands of unskilled work.  She can make simple work decisions, respond appropriately to supervisors and co-workers, handle routine changes, and work on a sustained and continuous basis.

Tr. 27-28.

Plaintiff argues that substantial evidence does not support the ALJ's RFC assessment, because the ALJ failed to incorporate therein all of the limitations found by Dr. Clem.  The undersigned agrees.  As

discussed above, the ALJ erred in rejecting Dr. Clem's opinion concerning plaintiff's ability to function mentally.  Also as discussed above, the ALJ failed to cite any other medical opinion source evidence that would form a sufficient basis for rejecting that opinion.  Accordingly, the ALJ should have included the limitations found by Dr. Clem in his assessment of plaintiff's residual functional capacity.

The undersigned disagrees with plaintiff, however, that the ALJ erred in not including in his RFC assessment any pulmonary limitations based on plaintiff's spirometry test results.  Plaintiff argues that taken at face value, those results are of listing level severity.[3]  However, plaintiff expressly states that she does not challenge the ALJ's step three determination that plaintiff's respiratory impairment met Listing 3.02 (chronic pulmonary insufficiency) or Listing 3.03 (asthma), because the spirometry results were not conducted according to the technical requirements of that Listing.  See (Dkt. #10, p. 6); Tr. 23.  Nor does plaintiff argue that such results meet or equal any other respiratory impairment contained in the listings.  In addition, the record contains no evidence of significant work-related limitations that have been attributed to plaintiff's respiratory impairment.  Plaintiff thus has failed to show any error in the ALJ's RFC assessment of her physical capabilities, including her ability to walk, on this basis.

III.   <u>The ALJ Erred in Relying on the Grids</u>

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. <u>Tackett</u>, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). <u>Tackett</u>, 180 F.3d at 1100-1101; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2000).  The Grids may be used if they "*completely and accurately* represent a claimant's

---

[3]At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R § 404.1520(d), § 416.920(d); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. <u>Id.</u>  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. <u>Tacket</u>, 180 F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." <u>Id.</u>  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.  An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." <u>Id.</u> at *2.  However, "symptoms alone" will not justify a finding of equivalence. <u>Id.</u>

1   limitations." <u>Tackett</u>, 180 F.3d at 1101 (emphasis in the original).  That is, the claimant "must be able to

2   perform the *full range* of jobs in a given category." <u>Id.</u> (emphasis in the original).  If the claimant "has

3   significant non-exertional impairments," however, reliance on the Grids is not appropriate.[4] <u>Ostenbrock</u>,

4   240 F.3d at 1162; <u>Tackett</u>, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit

5   claimant's functional capacity in ways not contemplated by Grids).

6           The Grids "are directly premised on the availability of jobs at the unskilled level," and "'reflect the

7   potential occupational base of *unskilled* jobs for individuals who have severe impairments which limit

8   their exertional capacities. . . .'" <u>Ortiz v. Secretary of Health and Human Services</u>, 890 F.2d 520, 526 (1st

9   Cir. 1989) (quoting SSR 85-15, 1985 WL 56857 *1 (emphasis added by court of appeals)).  The Social

10  Security Regulations themselves "take explicit administrative notice of the existence of '[a]pproximately

11  1600 separate sedentary and light *unskilled* occupations," with "each occupation representing numerous

12  jobs in the national economy." <u>Id.</u> (quoting 20 C.F.R. Part 404, Subpart P, App. 2, § 202.00(a) (1988))

13  (emphasis added by court of appeals).  As long as a non-exertional limitation is "substantially consistent

14  with the performance of the full range of unskilled work," therefore, the Grids retain their "relevance and

15  the need for vocational testimony is obviated." <u>Id.</u>

16          In this case, the ALJ found that while plaintiff had additional non-exertional limitations, they did

17  not significantly limit the range of work contemplated by the Grids. Tr. 26.  Specifically, the ALJ found

18  plaintiff retained the capacity to perform unskilled work despite those limitations. <u>Id.</u>  Plaintiff argues this

19  finding was error, as the mental functional limitations found by Dr. Clem and Dr. Comrie  – particularly

20  those in regard to her ability to work with supervisors and maintain attendance – constitute significant non-

21  exertional limitations, which preclude reliance on the Grids.  The undersigned agrees.

22          As discussed above, the ALJ erred in rejecting the limitations found by Dr. Clem and in failing to

23  include them in his assessment of plaintiff's RFC.  Also as discussed above, the findings made by Dr.

24  Comrie are largely supportive of or consistent with those limitations.  As the First Circuit noted in <u>Ortiz</u>:

25          The basic mental demands of competitive remunerative unskilled work include the
            abilities (on a sustained basis) to understand, carry out, and remember simple
26          instructions; to respond appropriately to supervision, coworkers, and usual work

27  _____

28      [4]"Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R.
    § 404.1569a(b), § 416.969a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other
    than the strength demands." 20 C.F.R. § 404.1569a(c)(1), § 416.969a(c)(1).

situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

890 F.2d at 526 (quoting SSR 85-15, 1985 WL 56857 *4).  Both Dr. Clem and Dr. Comrie found plaintiff to be significantly limited in her ability to respond to and interact with co-workers and supervisors, perform work activities on a consistent basis, and deal with the usual changes or stresses in a work setting. See Tr. 237-39, 432.  They also found her to be markedly impaired in her ability or not likely to complete a normal workday or workweek, which clearly would severely limit the occupational base as well. See Tr. 237, 432.  As such, the ALJ erred in relying solely on the Grids at step five here, and instead should have obtained the testimony of a vocational expert.

IV.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain at step five of the sequential disability evaluation process with respect to whether plaintiff is capable of performing other work existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for

further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 6, 2008**, as noted in the caption.

DATED this 12th day of May, 2008.


Karen L. Strombom
United States Magistrate Judge